Abu–Ali ABDUR' RAHMAN

v.

Ricky BELL.

No. 3:96–0380.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 21, 1998.

Bradley Alan MacLean, William P. Redick, Jr. Nashville, TN, for Petitioner.

John H. Baker, III, Nashville, TN, for Respondent.

## MEMORANDUM

CAMPBELL, District Judge.

### I. *Introduction*

Abu–Ali Abdur' Rahman, Petitioner, has been sentenced to death for first degree murder. He has filed a Petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging both his conviction and sentence. Currently pending before the Court for decision is Petitioner's First Motion For A Partial Summary Judgment (Docket No. 88). The Motion seeks summary judgment on two issues regarding the Tennessee trial court's jury instructions at sentencing: (1) "heinous, atrocious, or cruel" aggravating circumstances; and (2) "unanimity." For the reasons set forth below, the Court DENIES the Motion.

### II. *The Standards for Considering Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In order to prevail, the movant has the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether the movant has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In order to defeat the motion, the nonmoving party is required to show, after an adequate time for discovery, that there is a genuine issue of fact as to every essential element of that party's case upon which he will bear the burden of proof at trial. *Celotex Corp.,* 106 S.Ct. at 2553. In order to create a genuine factual issue, the nonmoving party must show "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Although the nonmovant need not show that the disputed issue should be resolved in his favor, he must demonstrate that there are genuine factual issues that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*

A preponderance of the evidence standard is used in this determination. *Id.* Therefore, if the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative," the motion for summary

judgment may be granted. *Id. See also Matsushita Electric,* 106 S.Ct. at 1356.

### III. *The Trial Court's Instructions Regarding the "Heinous, Atrocious or Cruel" Aggravating Circumstance*

Petitioner argues that the state trial court's instructions to the jury regarding the "heinous, atrocious or cruel" aggravating circumstance were unconstitutionally vague, and invited the jury to impose the death penalty in an arbitrary fashion in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

The Eighth Amendment requires that a state's capital sentencing scheme "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980) (footnotes omitted). Thus, a state's definition of aggravating circumstances—those circumstances that make the defendant "eligible" for the death penalty—must be sufficiently specific to avoid the arbitrary and capricious infliction of the death penalty. 100 S.Ct. at 1765.

A state appellate court may, however, cure an unconstitutionally vague aggravating circumstance by adopting a narrowing construction on appeal. The Supreme Court has specifically held that a state satisfies the constitutional requirement that it limit sentencing discretion by adopting a constitutionally narrow construction of a facially vague aggravating circumstance, and by applying that construction to the facts of a particular case. *Richmond v. Lewis,* 506 U.S. 40, 113 S.Ct. 528, 534, 121 L.Ed.2d 411 (1992); *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 3101, 111 L.Ed.2d 606 (1990); *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990).

When a petitioner argues that the state court misapplied that narrowing construction, the Court should hold the state court's decision arbitrary only if, viewing the facts in the light most favorable to the prosecution, no reasonable sentencer could have reached the same conclusion as the state court. 110 S.Ct. at 3102–04.

In this case, the state trial court instructed the jury as follows:

No death penalty shall be imposed unless you unanimously find that the State during the trial, and/or during the sentencing hearing, has proven beyond a reasonable doubt one or more of the following specific statutory aggravating circumstances:

\* \* \* \* \* \*

(2) the murder was especially heinous, atrocious or cruel, in that it involved torture or depravity of mind;

\* \* \* \* \* \*

In determining whether or not the State has proved aggravating circumstance number two above, you are governed by the following definitions. You are instructed that the word heinous means grossly wicked, or reprehensible, abominable, odious, vile. Atrocious means extremely evil or cruel, monstrous exceptionally bad, abominable. Cruel means disposed to inflict pain or suffering, causing suffering, painful—causing suffering—excuse me—painful. Torture means the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious. Depravity means moral corruption, wicked, or preverse (sic) act.

(Addendum 1, at 1990–91).

In *Godfrey v. Georgia,* the Supreme Court determined that the aggravating circumstance that the offense "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim" was unconstitutionally vague. 100 S.Ct. at 1762. The court's instructions to the jury did not elaborate on this aggravating circumstance, and the jury recited that a death sentence was imposed because the murder was "outrageously or wantonly vile, horrible or inhuman." *Id.*

In reaching its decision that the jury's finding was not sufficiently specific, the Court stated:

There is nothing in these few words [outrageously or wantonly vile, horrible and inhuman], standing alone, that implies any inherent restraint on the arbitrary and

capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.' Such a view may, in fact, have been one to which the members of the jury in this case subscribed. If so, their preconceptions were not dispelled by the trial judge's sentencing instructions. These gave the jury no guidance concerning the meaning of any of § (b)(7)'s terms...

100 S.Ct. at 1765.

The Court then concluded that this standard less imposition of the death sentence was not cured by the review of the sentence on appeal. *Id.* Although the Georgia Supreme Court had previously limited imposition of this aggravating circumstance to cases in which the defendant engaged in torture or aggravated battery of the victim prior to death, those limiting circumstances were not imposed by the court in reviewing Godfrey's death sentence. 100 S.Ct. at 1765–67. Indeed, the Court explained, the record suggested that Godfrey's victims died instantaneously as a result of a shotgun wound, and were not tortured or battered prior to their death. *Id.*

Eight years later, the Court overturned a death sentence imposed by an Oklahoma jury based on a similar aggravating circumstance. In *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), the jury found two aggravating circumstances to exist: that the defendant " 'knowingly created a great risk of death to more than one person;' " and that the murder was " 'especially heinous, atrocious, or cruel.' " 108 S.Ct. at 1856. In determining that the latter aggravating circumstance afforded the sentencer too much discretion, the Court explained that the language "especially heinous, atrocious or cruel" gave no more guidance than the language found at issue in *Godfrey.* 108 S.Ct. at 1859. Also, as in *Godfrey,* the Oklahoma appeals court did not cure the invalidity. *Id.*

The Court distinguished its decisions in *Godfrey* and *Maynard* in *Walton v. Arizona,* 110 S.Ct. at 3056–58. In *Walton,* the Court upheld application of the aggravating factor "especially heinous, cruel or depraved," which had been applied by a state trial judge under Arizona law. *Id.* The Court explained

that the state trial judge had applied a limiting definition to this aggravating circumstance, which had been established by the Arizona appellate courts and required the government to show that the victim suffered mental anguish or physical abuse before his death. 110 S.Ct. at 3057–58.

In *Sochor v. Florida,* 504 U.S. 527, 112 S.Ct. 2114, 2121–22, 119 L.Ed.2d 326 (1992), the Court held that a state trial judge did not err in applying the "especially heinous, atrocious and cruel" aggravating factor because he is presumed to have applied a narrowing construction given by the state's appellate courts applying this factor in strangulation cases.

In *Houston v. Dutton,* 50 F.3d 381, 387 (6th Cir.1995), the Sixth Circuit held that application of the same aggravating circumstance at issue here was invalid because the state trial court's instruction consisted only of the bare words of the statute, *i.e.* "The murder was especially heinous, atrocious or cruel in that it involved torture or depravity of mind." The State conceded error in that case. *Id.*

In this case, the trial court's instruction was more detailed than that given in *Godfrey, Maynard,* and *Houston.* Petitioner argues, however, that the instruction did not clearly require the jury to find that the crime involved torture, nor did it adequately define the term "depravity." The Court need not decide this issue because even if the definition is held to be unconstitutionally vague, the Tennessee Supreme Court cured that error by adopting a narrowing construction on appeal.

At the time Petitioner's appeal was pending before the Tennessee Supreme Court, the Tennessee courts had adopted a narrowing construction of the "heinous, atrocious and cruel" aggravator. In *State v. Williams,* 690 S.W.2d 517, 529 (Tenn.1985), the Tennessee Supreme Court first explained that the second clause of the statutory provision ("... in that it involved torture or depravity of mind") "qualifies, limits and restricts" the phrase in the first clause ("heinous, atrocious and cruel"). Therefore, the court concluded, in order to prove that the crime was heinous atrocious or cruel, the State must prove that

it involved "torture of the victim or depravity of the mind of the killer." *Id.*

The court then held that "torture" means "the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious." *Id.* Proving that torture occurred, the court explained, "necessarily, also proves that the murder involved depravity of mind of the murderer, because the state of mind of one who willfully inflicts such severe physical or mental pain on the victim is depraved." *Id.*

If the State does not prove torture as defined by the court, however, it may establish depravity only by proving that the acts demonstrating depravity "occurred so close to the time of the victim's death, and must have been of such a nature, that the inference can be fairly drawn that the depraved state of mind of the murderer existed at the time the fatal blows were inflicted upon the victim." *Id.* Thus, the court explained, mutilation of the dead body of the victim may be held to constitute depravity of mind only if the mutilation occurred so soon after the victim's death that it may be fairly inferred that the murderer possessed that state of mind at the time of the actual killing. 690 S.W.2d at 530. *See also State v. Hines,* 758 S.W.2d 515, 521–23 (Tenn.1988).

A similar narrowing construction was approved by the United States Supreme Court in *Walton v. Arizona,* as discussed above. *See also Maynard,* 108 S.Ct. at 1859 (a heinous, atrocious or cruel aggravator would be constitutionally acceptable if construed to require torture or serious physical abuse).

On appeal in this case, the Tennessee Supreme Court addressed this issue as follows:

It is defendant's insistence that the proof introduced was insufficient to establish that the murder of Patrick Daniels was especially heinous, atrocious or cruel and therefore the death penalty was unconstitutionally invoked. He argues that the State must show that he inflicted torture on the victim prior to death or that he committed acts evincing a depraved state of mind.

The victim in this case was bound, gagged, and blindfolded with duct tape. He was distressed, crying and begging not to be hurt. Defendant stood over him and stabbed him six times, four times penetrating the heart. He then watched as the victim went into convulsions, blood spewing from his nose and mouth. His accomplice testified, "he was working himself up on a rhythm," he was "cool" and "under control." The victim continued to plead with the defendant as he was being stabbed.

... There is no doubt that the evidence in this case was sufficient to support each of the [three] aggravating circumstances found by the jury.

*State v. Jones,* 789 S.W.2d 545, 550 (Tenn. 1990).

That the court did not specifically cite *Williams* and its progeny does not necessarily mean the court failed to apply the narrowing construction of *Williams* to the facts of the case. In determining whether application of a vaguely-defined aggravator was cured on appeal, the Supreme Court has looked to application of the narrowing construction to the facts of the case, rather than the state court's citation of previous authority. For example, in *Godfrey,* 100 S.Ct. at 1764–67, the Supreme Court determined that the state appellate court had not actually applied its previously recognized narrowing construction to the facts of the case, even though the state court cited the cases in which the narrowing construction was adopted.

As noted above, in prior cases, the Tennessee Supreme Court held that in order to satisfy the heinous, atrocious or cruel aggravating circumstance, the State was required to show that the defendant engaged in torture of the victim while the victim was alive, or that the defendant otherwise acted in a depraved manner, for example, by mutilating the victim's body immediately after death. *State v. Williams,* 690 S.W.2d at 529; *State v. Hines,* 758 S.W.2d at 521–23. Even though the Tennessee Supreme Court did not cite these decisions in deciding Petitioner's appeal, this Court presumes that the court knew the applicable law, *see Arave v. Creech,* 507 U.S. 463, 113 S.Ct. 1534, 1540–41, 123 L.Ed.2d 188 (1993) (federal court must presume that state trial judge, who sentenced defendant, knew and applied any ex-

isting narrowing construction of vague aggravating circumstance); *Walton,* 110 S.Ct. at 3057 (trial judges are presumed to know the law and to apply it in making their decisions), and the facts recited by the court indicate that it applied that law to the facts of Petitioner's crime. The court concluded that the Petitioner had engaged in torture of the victim, and/or acted with a depraved mind, by binding, gagging and blindfolding the victim with duct tape, then stabbing the victim repeatedly while the victim pleaded for his life, and watching as the victim went into convulsions with blood spewing from his mouth.

The Tennessee Supreme Court's recitation of these facts indicates that it applied a constitutional narrowing construction to this aggravating circumstance. Furthermore, this Court concludes that a reasonable factfinder would have agreed that Petitioner had engaged in torture of the victim prior to his death and acted with depravity of mind.

Petitioner is not entitled to judgment as a matter of law on this issue.

## IV. *The "Unanimity" Language of the Sentencing Instruction*

Petitioner argues that the trial court's charge to the jury at sentencing violated the Eighth Amendment because it led them to believe that they had to unanimously agree as to any mitigating circumstances, and because it failed to inform the jury that if they could not agree on a verdict, the Petitioner would be sentenced to life imprisonment

In *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), the Court settled the issue of what standard should be applied in reviewing jury instructions the petitioner claims impermissibly restricted the jury's consideration of relevant evidence: "We think the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." 110 S.Ct. at 1198. The Court noted the strong policy in favor of an accurate determination of the appropriate sentence in a capital case, but also noted the equally strong policy against retrials years later. *Id.* The Court explained:

Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Id.*

With regard to Petitioner's first argument, it is well established that in considering whether to impose the death penalty, a jury must be allowed to consider any mitigating circumstance, and that the jury need not unanimously agree as to the existence of any mitigating circumstance considered. *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 1865–66, 100 L.Ed.2d 384 (1988); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978).

In *Mills,* 108 S.Ct. at 1870, the Court held that petitioner's death sentence was unconstitutional because there was a substantial probability that reasonable jurors would have interpreted the judge's sentencing instructions and the verdict form as preventing them from considering any mitigating circumstance unless they unanimously agreed on the existence of that mitigating circumstance. Under Maryland's capital sentencing statute, if the sentencer unanimously finds the existence of aggravating circumstances, it then determines whether any mitigating circumstances outweigh the aggravating circumstances. 108 S.Ct. at 1865–66. In implementing this procedure, the trial court designed a verdict form that stated:

Based upon the evidence we unanimously find that each of the following aggravating circumstances which is marked 'yes' has been proven BEYOND A REASONABLE DOUBT and each aggravating circumstance which is marked 'no' has not been proven BEYOND A REASONABLE DOUBT:

108 S.Ct. at 1870 (Appendix to the *Opinion* of the Court). The form then listed ten aggravating circumstances followed by boxes which the jury could mark "yes" or "no." 108 S.Ct. at 1870–71.

Section II of the verdict form stated:

Based upon the evidence we unanimously find that each of the following mitigating circumstances which is marked 'yes' has been proven to exist by A PREPONDER-ANCE OF THE EVIDENCE and each mitigating circumstance marked 'no' has not been proven by A PREPONDER-ANCE OF THE EVIDENCE:

108 S.Ct. at 1871. The form then listed seven specific mitigating circumstances followed by boxes for "yes" and "no," and an eighth "catch all" that required the jury to write in any other mitigating circumstance that applied. 108 S.Ct. at 1871–72.

Section III stated:

Based on the evidence we unanimously find that it has been proven by A PRE-PONDERANCE OF THE EVIDENCE that the mitigating circumstances marked 'yes' in Section II outweigh the aggravating circumstances marked 'yes' in Section I.

108 S.Ct. at 1872. This statement was followed by boxes for "yes" and "no." *Id.*

The Court found that this form and the trial court's instructions suggested that the jurors could only consider mitigating circumstances which they unanimously agreed existed. 108 S.Ct. at 1868–69. The Court explained that:

Section III instructed the jury to weigh only those mitigating circumstances marked 'yes' in Section II. Any mitigating circumstance not so marked, even if not unanimously rejected, could not be considered by any juror. A jury following the instructions set out in the verdict form could be 'precluded from considering, as a mitigating factor, [an] aspect of a defendant's character or record [or a] circumstanc[e] of the offense that the defendant proffer[ed] as a basis for a sentence less than death,' if even a single juror adhered to the view that such a factor should not be so considered.

108 S.Ct. at 1868 (citation and footnote omitted).

The Court addressed this same issue two years later in *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). In *McKoy,* 110 S.Ct. at 1230, the verdict form specifically asked the jury: "Do you unanimously find from the evidence the existence of one or more of the following mitigating circumstances?" The trial judge orally instructed the jury that if they did not unanimously find each of the mitigating circumstances by a preponderance of the evidence, they were to write "no" as to each mitigating circumstance listed. *Id.* The verdict form also stated that the jury was to indicate unanimous agreement by writing "yes" or "no" as to each mitigating circumstance. *Id.*

The Court held that the instructions and form used by North Carolina impermissibly limited jurors consideration of mitigating evidence, and was, therefore, contrary to the holding of *Mills v. Maryland.* 110 S.Ct. at 1234. Consequently, the Court vacated the petitioner's death sentence. *Id.*

The lower courts have addressed the issue of whether an instruction that did not explicitly require unanimity on mitigating circumstances nonetheless led the jury to believe unanimity was required under *Mills* and *McKoy.* In an en banc opinion in *Kordenbrock v. Scroggy,* 919 F.2d 1091, 1108–09 (6th Cir.1990), four members of the Sixth Circuit concluded that the instructions given were unconstitutional because they suggested unanimity on mitigating circumstances. The other nine members of the court disagreed. 919 F.2d at 1120–21.

Although the court did not specifically describe the instructions and verdict form used by the trial court, the nine-justice majority indicated that:

The instructions carefully stated that finding an aggravating factor required such agreement, but it cannot be reasonably inferred that silence as to finding a mitigating factor would likely cause the jury to assume that unanimity was also a requirement. Indeed it would indicate the opposite. The instructions were not misleading.

919 F.2d at 1121.

More recently, a panel of the court noted its concern with unanimity instructions, but did not squarely address the issue. In *Austin v. Bell,* 126 F.3d 843, 849 (6th Cir.1997), the court held that the case would be remanded for resentencing because the peti-

tioner had received ineffective assistance of counsel during sentencing. Consequently, the court explained, it was unnecessary to address the issue of "whether the instruction on mitigating circumstances created a substantial possibility that the jury interpreted the instruction to prevent them from individually considering a mitigating circumstance unless they unanimously agreed on that circumstance." 126 F.3d at 849. The court noted, however, its "serious concerns" that the instructions "did just that." *Id.* The court did not describe the instructions or verdict form or otherwise indicate what language it considered might be constitutionally impermissible.

The Third Circuit squarely addressed the *Mills/McKoy* issue in *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 307–08 (3rd Cir.1991). The instructions in *Zettlemoyer* stated in part: "... you are obligated [to impose the death penalty] if you unanimously agree and find beyond a reasonable doubt that there is an aggravating circumstances (sic) and either no mitigating circumstance or that the aggravating circumstance outweighs any mitigating circumstances." *Id.* The verdict form used similar language. 923 F.2d at 308.

The court concluded that the instructions were not defective. *Id.* The court pointed out that unlike *Mills*, the jury was not explicitly told that they must unanimously agree to mitigating circumstances. *Id.* In addition, the court explained, the instructions specifically stated that the jury must unanimously agree as to aggravating circumstance, and specify the aggravating circumstances it found. *Id.* That the instructions did not state similar requirements regarding mitigating circumstances, indicated that unanimity was not required, and that the consideration of mitigating circumstances was "broad and unrestricted." *Id.* Finally, the court pointed out, the statement quoted above "indicates only that the jury's ultimate conclusion must be unanimous, not that each interim step in its deliberations be unanimous." *Id. See Duvall v. Reynolds*, 131 F.3d 907, 931 (10th Cir.1997) (In reviewing a similar charge, court concludes that unanimity language refers "only to the jury's balancing of aggravating versus mitigating circumstances, and not to the initial determination of whether mitigating circumstances exist in the first

place."); *Powell v. Bowersox*, 112 F.3d 966, 970–71 (8th Cir.1997) (Court finds that similar instructions "deal with balancing mitigating circumstances against aggravating factors, not with determining what mitigating circumstances exist.").

In a more recent decision, *Frey v. Fulcomer*, 132 F.3d 916, 922–24 (3rd Cir.1997), the Third Circuit reached a different conclusion in reviewing an instruction that stated in part: "... the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstances ..." *See also Kubat v. Thieret*, 867 F.2d 351, 371–73 (7th Cir.1989) (Court concluded that instruction that stated in part: "If, after your deliberations, you unanimously conclude that there is a sufficiently mitigating factor or factors to preclude imposition of the death sentence ..." was unconstitutional under *Mills/McKoy* ).

The Fourth Circuit has addressed this issue in several cases involving instructions used by North Carolina courts. In *Maynard v. Dixon*, 943 F.2d 407, 418 (4th Cir.1991), the jury had been asked to answer four questions:

Issue One: Do you unanimously find from the evidence, beyond a reasonable doubt, that one or more of the following aggravating circumstances existed at the time of the commission of this murder?

Issue Two: Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances found by you are sufficiently substantial to call for the imposition of the death penalty?

Issue Three: Do you find one or more mitigating circumstances?

Issue Four: Do you unanimously find beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances?

943 F.2d at 419.

The court concluded that the instructions and verdict form did not give the jury the impression that it must unanimously conclude that mitigating circumstances exist. *Id.* The court noted that question three in the verdict form did not require unanimity, and that the court did not instruct the jury to

agree on mitigating circumstances. *Id. See also Lawson v. Dixon,* 3 F.3d 743, 754 (4th Cir.1993) (court upheld constitutionality of an instruction that stated: "[The issue is] do you find unanimously beyond a reasonable doubt that the aggravating circumstance or circumstances found by you outweigg [sic] any mitigating circumstance or circumstances found by you.")

In *Noland v. French,* 134 F.3d 208 (4th Cir.1998), the court upheld the same instructions used in *Maynard* with the addition of a general unanimity instructions given just before the judge released the jury to deliberate: "After you have reached a unanimous decision as to each issue . . . have your Foreman mark the appropriate place or places on the issues and recommendation forms." at 214. The general unanimity instruction was not directed to any particular issue or question listed on the verdict form. *Id.*

The court concluded that there was not a reasonable likelihood that this instruction led the jury to believe they were required to unanimously agree on mitigating circumstances. *Id.* The court pointed out that this statement was a supplemental instruction given after an explanation of the specific and detailed instructions contained on the verdict form. *Id.* The court found that "[i]t was entirely clear from this portion of the instructions that three of the four issues on the verdict form required juror unanimity while one, the mitigating factor question, did not." *Id.* The court concluded that it was not reasonably probable that the jury would have disregarded these instructions based on the court's final comment. *Id.*

■ In this case, the substantive portions of the trial court's instructions are as follows, with italics highlighting those portions which are the focus of Petitioner's challenge:

Our statutory law provides that the jury shall fix punishment after a separate sentencing hearing, to determine whether the defendant shall be sentenced to death or life imprisonment. *Your verdict must be unanimous as to either form of punishment.*

\* \* \* \* \* \*

No death penalty shall be imposed unless you unanimously find that the State during the trial, and/or during the sentencing hearing, has proven beyond a reasonable doubt one or more of the following specific statutory aggravating circumstances:

\* \* \* \* \* \*

In arriving at the punishment, the jury shall consider, as heretofore indicated any mitigating circumstances which shall include, but not be limited to the following:

\* \* \* \* \* \*

If the jury unanimously determines that at least one statutory aggravating circumstance or several statutory aggravating circumstances have been proved by the State beyond a reasonable doubt, and that the aggravating circumstance or circumstances outweigh any mitigating circumstances, the sentence shall be death. If the death penalty is the decision of the jury the members of the jury shall then complete the attached form entitled, quote:

Punishment of Death

End quote.

The jury must include and reduce to writing the specific statutory aggravating circumstance or circumstances so found. *Further, the jury must include in its finding that the statutory aggravating circumstance or circumstances so found outweigh any mitigating circumstances. Upon such unanimous finding,* each member of the jury shall affix his or her signature to the said written finding, and then return said written verdict to the Court.

If the jury unanimously determines that no statutory aggravating circumstance or circumstances have been proven by the State beyond a reasonable doubt; or if the jury unanimously determines that the statutory aggravating circumstance or circumstances have been proved by the State beyond a reasonable doubt, but that the said circumstance or circumstances do not outweigh any mitigating circumstances, the punishment shall be life imprisonment.

(Addendum I, at 1992–94).

At the end of the instructions, the judge instructed the jury that:

The verdict must represent the considered judgment of each juror. *In order to*

*return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.*

(Addendum I, at 1996).

The first paragraph merely states that the verdict must be unanimous. This is a correct statement, and it does not mention mitigating circumstances.

The next instruction challenged by Petitioner states that the jury must state in its finding that aggravating circumstances outweigh *any* mitigating circumstances. The jury is then instructed that the decision must be unanimous. A reasonable reading of this instruction indicates that the jury must unanimously agree about the result of weighing the aggravating circumstances against any mitigating circumstances.

Finally, the last instruction challenged by Petitioner was given immediately before the jury was released and did not refer to or attempt to alter any of the specific instructions already given by the judge. *See United States v. Chandler,* 996 F.2d 1073, 1089 (11th Cir.1993) (similar charge did not coerce jury into verdict for death sentence).

Considering the jury instructions as a whole, the Court concludes that there is not a reasonable likelihood that the jury interpreted the instructions to require unanimity as to mitigating circumstances. Unlike *Mills* and *McKoy,* the jury was not explicitly told that mitigating circumstances required unanimity. Like the Sixth Circuit majority in *Kordenbrock,* and the other decisions set forth above, this Court is not persuaded that silence as to finding a mitigating circumstance would likely lead the jury to believe that unanimity was required in this case.

Furthermore, it is reasonable to assume that because the jury was explicitly told they must agree on aggravating circumstances, and they were not told mitigating circumstances required unanimity, they would conclude that unanimity was not required as to mitigating circumstances.

The verdict form in the instant case was not preserved. The form to be used in capital sentencing cases at the time Petitioner was sentenced, however, was proscribed by statute. Subsection (f) of that statute, Tennessee Code Annotated 39–2–203, provides that the jury shall report its verdict of life

imprisonment on a form "which may appear substantially as follows:

### PUNISHMENT OF LIFE IMPRISONMENT

(1) We, the jury, unanimously find that the punishment shall be life imprisonment." This language was to be followed by a signature line for each juror.

Subsection (g) provided that the jury shall report its verdict of a death sentence on a form "which may appear substantially as follows:

### PUNISHMENT OF DEATH

(1) We, the jury, unanimously find the following listed statutory aggravating circumstance or circumstances:

[Here list the statutory aggravating circumstance or circumstances so found]

(2) We, the jury, unanimously find that there are no mitigating circumstances sufficiently substantial to outweigh the statutory aggravating circumstance or circumstances so listed above.

(3) Therefore, we, the jury, unanimously find that the punishment shall be death."

This language was also to be followed by a signature line for each juror.

Petitioner argues that the language in item 2 on the "Punishment of Death" form suggests that the jury must unanimously find the existence of mitigating circumstances. The Court concludes that a reasonable juror would read the instruction to require unanimity only as to the results of the weighing process, not that the jury must unanimously agree that a mitigating circumstance exists. The interpretation Petitioner suggests requires that the instruction be read out of context.

Petitioner is not entitled to summary judgment as to this issue.

■ Petitioner also argues that the instructions and verdict form were unconstitutional because they failed to advise the jury that life imprisonment would result if they failed to reach a unanimous verdict. But several federal courts have held that there is no constitutional requirement that the jury

be told that the result of a failure to reach unanimity would result in imposition of a life sentence. In *United States v. Chandler*, 996 F.2d at 1089, the court explained that this conclusion is supported by "the general interest the criminal justice system has in unanimous verdicts." The court noted that: "[a]sking the jury to return a unanimous verdict forces jurors to examine their views on the case and engage in discussions and deliberations as they attempt to resolve their differences." *Id. See also Zettlemoyer*, 923 F.2d at 309; *Evans v. Thompson*, 881 F.2d 117, 123–24 (4th Cir.1989). Accordingly, Petitioner is not entitled to summary judgment on this issue.

It is so ORDERED.