Richard **HOUSTON**, Petitioner–Appellee,

v.

Michael **DUTTON**, Warden, Tennessee State Penitentiary, Respondent–Appellant.

No. 94–6064.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 1, 1995.

Decided March 28, 1995.

Henry A. Martin, Fed. Public Defender, Federal Public Defender's Office, Nashville, TN, James S. Liebman (argued and briefed), Columbia University School of Law, New York City, and Mark E. Olive, Tallahassee, FL, for petitioner-appellee.

Gordon W. Smith (briefed), Kathy Morante, Asst. Attys. Gen., Charles W. Burson, Atty. Gen., Glenn R. Pruden, Michael Moore (argued and briefed), and Brent Horst (briefed), Office of the Atty. Gen., Nashville, TN, for respondent-appellant.

Before: MERRITT, Chief Judge; GUY and RYAN, Circuit Judges.

MERRITT, Chief Judge.

In this Tennessee death penalty case, the District Court issued a writ of habeas corpus in favor of petitioner Houston, finding seven separate constitutional grounds for setting aside Houston's first degree murder conviction, death sentence, and armed robbery conviction. We uphold the writ on two of the grounds, disagree with the District Court on one of the grounds, pretermit the State's remaining four assignments of error, and reinstate the armed robbery conviction.

The State concedes that the trial court in Knoxville erred in two respects relating to the constitutional requirements of first degree capital murder but claims that the errors were harmless. *First,* by instructing the jury that it should "presume malice" (a key element of first degree murder) from the killing itself and the use of a gun—neither of which was disputed—the state trial court violated the rule of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (presumptions that shift burden from State to defendant in criminal proceeding unconstitutional); *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (mandatory rebuttable presumption of

malice instruction unconstitutional because it shifts burden from State to defendant); and *Yates v. Evatt*, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991) (courts not to assume such mandatory rebuttable presumptions are harmless error). *Second*, by instructing the jury at the sentencing hearing that it should impose the death penalty if it should find the crime to be "heinous, atrocious or cruel" (and not outweighed by any mitigating circumstance), the state trial court violated another line of cases holding that such an instruction is too vague and uninformative to properly guide the jury in reaching a death verdict. *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (Oklahoma's "heinous, atrocious or cruel" aggravating circumstance too vague to constitutionally channel jury's discretion to impose death penalty); *Richmond v. Lewis*, —— U.S. ——, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992) (unconstitutional "heinous, atrocious or cruel" aggravator taints sentencing process and requires remand to state court for resentencing).

These two constitutionally invalid instructions require the habeas corpus remedy as ordered by the District Court for the reasons outlined below. The District Court erred, however, in its finding that the evidence of first degree murder offered by the State was insufficient under the Due Process Clause to justify a rational jury in making such a finding. We will discuss the sufficiency of the evidence point first and then the two erroneous instructions before concluding with a section holding that the District Court erred in setting aside the armed robbery conviction.

## I. THE SUFFICIENCY OF THE EVIDENCE UNDER *JACKSON v. VIRGINIA*

■■■ As one of the grounds in support of granting Houston's habeas petition, the District Court found insufficient evidence of premeditation and deliberation to sustain a finding of first-degree murder under Tennessee law. Where the sufficiency of the evidence is challenged, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The evidence is strong, indeed practically undisputed, that Houston, during the course of a robbery, killed the owner of a Knoxville gas station in the bathroom at the rear of the gas station. Houston's sole defense at trial was that the killing was an accident that occurred during the course of a struggle over the gun used in the robbery. Although it is possible that the killing could have occurred as the defendant stated in his confession, the circumstantial evidence supports an inference of premeditation and deliberation.

The evidence supports the following propositions of fact. Houston approached Stanley Balsinger's Gulf station in Knoxville with a loaded .38 caliber revolver. That weapon killed Balsinger, an unarmed victim. Each of the victim's three wounds hit areas of the body likely to produce death—the face, the heart, and the vital organs of the mid-section. Although there is conflicting testimony in the record regarding the existence of powder burns on the mouth wound, the state's pathologist said that there were no such burns on the mouth. This supports an inference that the mouth wound was inflicted first, from a distance. The evidence indicates that the face wound was not fatal, but would certainly have incapacitated Balsinger, rendering him helpless. The powder burns around the two other wounds to the heart and mid-section indicate that the shots were fired at point-blank range. In contrast to Houston's testimony that he ran away from the shooting after an extended struggle, Kenneth Hill, a witness who did not see or hear the shots, testified that he watched Houston walk calmly away from the area of the service station restroom back to his car. The defendant's calm demeanor after the shooting can be inferred from the testimony that he went back to his hotel room, deliberately reloaded his gun, had three beers, took a shower, attempted to destroy the evidence of the crime by washing away the victim's blood from his stained clothing, asked his girlfriend for sex, and then went out for dinner, driving by the murder scene on his

way to Kentucky Fried Chicken to see whether there was any police activity. When viewed as a whole, the defendant's activities after the murder further support an inference that he premeditated and deliberated about killing Stanley Balsinger after robbing him. They allow the jury to reject the defendant's theory that this was a spur of the moment robbery which ended in an extended, deadly struggle over a gun.

Under *Jackson*, the entire record is to be reviewed and all reasonable inferences must be drawn in favor of the State. From these circumstances, a rational fact finder could have inferred beyond a reasonable doubt that Houston, notwithstanding testimony that the gun accidentally went off in a scuffle, thought about killing Balsinger in advance and did in fact do so after robbing him. Under the standards accepted in Tennessee in 1980, Houston had sufficient time to premeditate and deliberate about the killing of Stanley Balsinger. The evidence, viewed in the light most favorable to the State, is sufficient to allow a rational jury to find that Houston deliberately and premeditatedly killed Stanley Balsinger in order to eliminate the only eyewitness to his crime and to prevent his own arrest.

In *Houston v. State*, 593 S.W.2d 267 (Tenn.), *cert. denied*, 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980), the original state opinion in the direct appeal of this case, the majority affirmed Houston's conviction for first degree murder, finding explicitly that premeditation and deliberation could be inferred from the circumstances of the murder, including the evidence of multiple gunshot wounds. In *State v. Brown*, however, the Tennessee Supreme Court held that evidence of repeated blows was no longer sufficient evidence alone from which to infer premeditation. The *Brown* Court explained that repeated blows "can be delivered in the heat of passion, with no design or reflection." 836 S.W.2d 530, 542 (Tenn.1992). This holding is unsurprising because it is a rare killing where the only circumstantial evidence available is multiple gunshots. In *Bass v. State*, the Tennessee Supreme Court said:

> While willful killing with a deadly weapon is not a sufficient basis for an inference of

premeditation and deliberation, it is seldom that the evidence in a case of homicide is restricted to no more than these bare facts and it is commonly the case that the jurors have before them other circumstances from which they may infer the existence or the want of mental elements of premeditation and deliberation.

191 Tenn. 259, 231 S.W.2d 707, 711 (1950).

Citing *Brown*, the District Court held that under Tennessee law the mere fact that the victim had multiple gunshot wounds is an insufficient basis from which a jury may infer premeditation and deliberation. The District Court concluded that "[t]he State's evidence fell short as a matter of law of the constitutional minimum needed to convince a rational juror beyond a reasonable doubt that the killing was premeditated and deliberate." *See* Memorandum of Federal District Court, Joint Appendix at 1184. The District Court's holding, based on the constitutional insufficiency of the evidence at Houston's trial, if upheld, would mean that under normal circumstances a retrial of Houston for murder would be barred by the double jeopardy clause of the Fifth Amendment ("nor shall any person be subject for the same offence be twice put in jeopardy of life or limb".).

*Brown*, however, should not be applied this way in this federal habeas appeal. Although *Brown* discussed the precedent set in *Houston*, it did not overturn his conviction. It overruled *Houston* only "to the extent that the opinions in *Houston* and [*State v.*] *Martin* [702 S.W.2d 560 (Tenn.1985)] can be read to hold otherwise...." 836 S.W.2d at 543. This uncertain modification of state law leads us to the conclusion that the federal District Court erred when it applied *Brown* to set the federal standards for a sufficiency of the evidence analysis. As stated above, under the analysis in *Jackson v. Virginia* there is sufficient evidence in the record here beyond the bare fact of three shots to allow a rational juror to find beyond a reasonable doubt that the killing was premeditated and deliberate.

█ Moreover, no Tennessee court to date has held that Houston's conviction must be reversed in light of *Brown*. Significantly, Houston applied for post-conviction relief in

light of *Brown.* On November 24, 1992, he filed a Motion to Recall the Mandate in the Tennessee Supreme Court. In his brief in support of the motion, Houston argued that the court should review his case under the *Brown* standards and urged the court to modify his conviction to second degree murder. In an order dated March 11, 1993, the Tennessee Supreme Court found that this motion was without merit and refused to recall its mandate. When and how state law applies to a particular case is a matter on which the state supreme court has the last word. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law'.... [I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.") (citation omitted). No federal issues are implicated and no federal question is presented in determining whether a change in state law is to be applied retroactively.

## II. THE PRESUMPTION OF MALICE INSTRUCTION

■ The fact that the evidence was sufficient to allow a jury to convict, of course, does not end the matter. The judge's instructions to the jury as to the law and how the evidence should be assessed are crucial to a fair trial. They should guide the jury's deliberations and are not mere technicalities in our legal system. Errors in such matters may go to the heart of the question of guilt.

The trial judge gave the following instruction which the State concedes (as to the underlined portions) violates the rule of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), and *Yates v. Evatt,* 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), in that it shifts to the defendant the burden of disproving malice:

Malice is an essential ingredient of murder, and it may be either express or implied. Express malice is actual malice against the party slain. Implied malice is malice not against the slain, but malice in general, or that condition of mind which indicates a wicked, depraved, and malignant spirit, and a heart regardless of social duty and fatally bent on mischief.

*If the State proves beyond a reasonable doubt that a killing has occurred, it is presumed to be malicious unless rebutted by other facts and circumstances to the contrary.*

\*　　\*　　\*　　\*　　\*　　\*

A deadly weapon is an instrument, which from the use made of it at the time, is likely to produce death or to do great bodily harm. *The use of a deadly weapon by the party killing, when shown, raises a presumption of malice sufficient to sustain a charge of Second Degree Murder unless it is rebutted by other facts and circumstances to the contrary.*

You should look to all the facts and circumstances developed by the evidence in this case to determine whether or not the State has proved beyond a reasonable doubt the existence of malice.

T.T. 602–3

The same definition of malice was used in the charge to cover first and second degree murder. T.T. 598–603.

■ In *Sandstrom* the Supreme Court held that such burden-shifting by presumption violates the Due Process Clause of the Constitution. 442 U.S. at 520, 99 S.Ct. at 2457. It is unconstitutional to shift the burden of proving an element of a crime to the defendant. It lifts from the state the burden that it must bear, and then it puts the burden upon the accused, who constitutionally should not suffer under it: "[T]he Fourteenth Amendment's guarantees prohibit a State from shifting to the defendant an element of the crime charged." *Sandstrom,* 442 U.S. at 527, 99 S.Ct. at 2461 (Rehnquist, J., concurring).

This concept was applied specifically to presumed malice instructions in *Francis v. Franklin.* The Court held that a mandatory rebuttable presumption violates the Due Process Clause. 471 U.S. at 317, 105 S.Ct. at 1972. In *Yates v. Evatt,* 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), the Court again found a mandatory rebuttable pre-

sumption unconstitutional. As here, the instruction in that case told the jury to infer malice from either an unlawful act, like a killing, or from the use of a deadly weapon, and the Court warned that we should not assume that such unconstitutional instructions are harmless. 500 U.S. at 402, 111 S.Ct. at 1892.

Thus, the instruction in this case was unconstitutional, as the State has conceded, and we proceed to harmless error analysis under *Brecht v. Abrahamson*, —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (the test for harmless error is whether it had a "substantial and injurious effect or influence" upon the jury) and *O'Neal v. McAninch*, —— U.S. ——, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) ("grave doubt" about harmlessness of error to be resolved in favor of petitioner).[1] The defendant's theory of defense was that the killing occurred by accident as a result of a struggle over the gun, a theory inconsistent with malice. Accident was the only defense. In both law and common sense, accident and malice are conceptually incompatible. A "malicious accident" is an oxymoron. The instruction to presume malice from the unrefuted facts of an unlawful killing and the use of a deadly weapon essentially told the jury to reject petitioner's claim that the shooting was accidental. By thus destroying defendant's theory of accident at the outset, the malice instruction substantially and injuriously affected the verdict, resulting in prejudice to the defendant.

The State argues that this instruction was mere harmless error because the jury independently found premeditation, deliberation and willfulness, elements inconsistent with accident:

> Houston's jury was instructed on each of the elements of first-degree murder separately and was told that the State must prove *each one* of them beyond a reasonable doubt. Given these instructions, a juror could have "bootstrapped" the presumption of malice into findings of premeditation, deliberation and willfulness only by disregarding the instructions.

State Reply Brief at 8 (emphasis in original). We agree with Houston's counter-argument that the malice instruction had the effect of telling the jury to presume

> that the killing was subjectively contemplated beforehand—and thus that the killing was *not* accidental—[which] utterly wiped out Mr. Houston's single and, on the evidence, substantial *accident* defense. Because accident would have negated not only malice but also willfulness, premeditation, and deliberation, removing the accident defense unconstitutionally left Mr. Houston with *no* defense, and paved the way to a finding of all four mental elements.

Defendant's Supplemental Brief at 5 (emphasis in original). The instruction that the jury should presume that Houston had knowledge that death would follow his actions established not only malice but the initial intent or design element in premeditation, deliberation and willfulness.

What also makes the instruction harmful is that it probably led the jury to accept the prosecutor's theory argued repeatedly and vigorously that Houston robbed the owner in the office of the gas station and then "marched" him around to the bathroom and "executed" him. This scenario is doubtful in light of evidence that the gas station was probably closed and locked before the robbery. Yet with the accident defense out of the case because of the presumption, the only theory left before the jury was the State's execution theory. The State's theory

---

1. In *O'Neal* the Supreme Court quoted with approval the following test of harmless error from the earlier case of *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946):
   If, when all is said and done, the [court] is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to *support* the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand. 328 U.S. at 764–5, 66 S.Ct. at 1248, *quoted in O'Neal*, —— U.S. at ——, 115 S.Ct. at 995.

that Houston emptied the cash register in the office and then marched the victim to the bathroom is now in doubt, but the instruction that the jury should presume "express or implied malice" suggested to the jury that the State's theory was probably true. The prosecutor in closing argument used the presumption of malice effectively to include the other elements of first degree murder as well:

> [A]nybody that goes down there and arm robs a human being with a deadly weapon and then shoots them in whatever fashion is guilty of First Degree Murder, of premeditated, malicious, deliberate, willful, unlawful, premeditated murder.

T.T. 596. Thus, we believe the error was harmful, and the order of the District Court issuing the writ of habeas corpus on this ground is affirmed.

## III. THE "HEINOUS, ATROCIOUS OR CRUEL" INSTRUCTION

■ Tennessee is a "weighing" state—that is, the jury determines whether any aggravating circumstances have been established beyond a reasonable doubt by the State and then balances this against any mitigating circumstances found by the individual jurors. If the jury unanimously finds that the aggravators outweigh the mitigators, death *must* be imposed.

In this case, the trial judge instructed the jury on aggravating circumstances in part:

> No death penalty shall be imposed but upon a unanimous finding by the jury that one or more of the following specified statutory aggravating circumstances have been proved on the trial and/or on the sentence hearing beyond a reasonable doubt:
>
> ☐The murder was especially heinous, atrocious or cruel in that it involved torture or depravity of mind.

T.T. 683. This was the whole of the instruction given the jury regarding the "heinous, atrocious or cruel" aggravator, and the jury found this aggravator as a basis for the death penalty. Under the cases cited in the opening section of this opinion, this instruction was constitutional error, and the State con-

cedes the instruction to be erroneous in this case.

■ Even if there were no other error in this case, we could not allow the death sentence to stand. The remedy for such constitutional violations respecting aggravating circumstances is set out in *Richmond v. Lewis,* ___ U.S. ___, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), a case directly in point. There the Arizona trial court gave a similar "especially heinous, cruel or depraved" instruction. The federal district court and the court of appeals denied relief, and the Supreme Court reversed:

> Where the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must actually perform a new sentencing calculus, if the sentence is to stand.
>
> *       *       *       *       *       *
>
> We reverse the judgment of the Court of Appeals and remand with instructions to return the case to the District Court to enter an order granting the petition for a writ of habeas corpus unless the State of Arizona within a reasonable period of time either corrects the constitutional error in petitioner's death sentence or vacates the sentence and imposes a lesser sentence consistent with law.

___ U.S. at ___, ___, 113 S.Ct. at 535, 537. The State courts in Tennessee have not found this instruction to constitute error and therefore have not performed "a new sentencing calculus" in this case. *Thus,* the District Court was correct in its order issuing the writ of habeas corpus on this ground.

## IV. THE ROBBERY CONVICTION

■ The District Court also vacated petitioner's armed robbery conviction on two separate grounds: the prosecution's comments in closing argument which Houston claims make direct reference to his failure to testify and his shackling during a part of the trial. Assuming without deciding that the District Court correctly analyzed these claims, we decline to grant the writ of habeas corpus insofar as it applies to the armed

robbery conviction because the errors were harmless.

■ The District Court applied the harmless error standard set out in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which the Supreme Court has now held inapplicable to habeas petitions. *Brecht*, —— U.S. at ——, 113 S.Ct. at 1721. The old *Chapman* standard calls upon the State to show beyond a reasonable doubt that an error did not affect the jury's deliberations. As noted previously, the proper standard now is whether the error had a "substantial and injurious effect or influence" upon the jury's verdict. *Id.* at ——, 113 S.Ct. at 1722.

It is clear in this case that these two alleged errors did not have a substantial and injurious effect or influence upon the jury's deliberations concerning the petitioner's guilt of armed robbery. Houston's role in the armed robbery was basically undisputed. His confession was fully corroborated by other evidence. The only "evidence" in this case supporting petitioner's innocence of the armed robbery is his plea of "not guilty." He was caught immediately after the event in possession of money and checks taken in the robbery. Accordingly, the petitioner's conviction and sentence on the armed robbery charge should be reinstated, and the District Court's order issuing the writ on this ground is reversed.

Accordingly, the order and judgment of the District Court issuing the writ of habeas corpus is vacated except as to the two grounds stated in Sections II and III of this opinion as to which the District Court is affirmed, and the case is remanded to the District Court for modification of its writ of habeas corpus as provided in this opinion.