IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

AUGUST 1997 SESSION

FILED

March 17, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| JEFFREY STUART DICKS, | ) | No. 03C01-9606-CC-00231 |
| Appellant, | ) | Greene County |
| V. | ) | Hon. William H. Inman, Judge |
| STATE OF TENNESSEE, | ) | (Post-Conviction--Death Penalty) |
| Appellee. | ) | |

OPINION CONCURRING IN PART; DISSENTING IN PART

I agree with the majority's determination that the issues concerning jury instructions on mitigating circumstances have been waived. In my view, however, the state has not carried the burden of establishing, beyond a reasonable doubt, that the Middlebrooks error was harmless. In consequence, I believe that the petitioner is entitled to a new hearing in the penalty phase of the trial.

In 1979, the petitioner and Donald Wayne Strouth robbed a store. The theory of the state was that Dicks disabled the victim by striking him on the head with a rock. Strouth then slit his throat from ear to ear. Although tried separately, Strouth also received the death penalty when the jury determined there were two aggravating circumstances: (1) that the murder was heinous, atrocious, and cruel; and (2) that the murder was committed during the perpetration of a felony. See Tenn. Code Ann. § 39-2404(i)(5), (7) (Supp. 1978). Strouth filed a post-conviction petition claiming Middlebrooks error. This court ruled that the error was harmless. Donald Wayne Strouth v. State, No. 03C01-9507-CC-00195 (Tenn. Crim. App., at Knoxville, Mar. 4, 1997), app. granted, (Tenn., July 7, 1997). While the supreme

court has granted review, no opinion has been released as of yet.

The state, in this case, acknowledges that the trial court erred by allowing the jury to consider the felony murder aggravator, Tenn. Code Ann. § 39-2404(i)(7) (Supp. 1978), as an aggravating circumstance. In State v. Howell, 868 S.W.2d 238, 261 (Tenn. 1993), our supreme court ruled that reviewing courts should consider the following factors to determine whether the error, as recognized in State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), is harmless in the context of the trial:

> (1) the number and strength of remaining valid aggravating circumstances;
>
> (2) the prosecutor's argument at sentencing;
>
> (3) the evidence admitted to establish the invalid aggravator; and
>
> (4) the nature, quality and strength of mitigating evidence.

In my view, these factors suggest the Middlebrooks error contributed to the jury's conclusion that the death sentence was warranted in this case.

(1)

Absent the felony murder aggravating circumstance, the only valid remaining aggravating circumstance is that the murder was heinous, atrocious and cruel. Tenn. Code Ann. § 39-2404(i)(5) (Supp. 1978). The proof shows that the victim suffered three injuries: a cut over the skull about one-half to three-quarters of an inch deep; a laceration on the right ear extending completely through the cartilage; and a slash over the neck from ear to ear about two inches deep. Thus, the evidence is sufficient, as indicated by the majority, to establish the heinousness of the offense.

2

Of particular importance, however, is that the jury was not given instructions that adequately defined the statutory terms. See Tenn. Code Ann. § 39-2404(i)(5) (Supp. 1978). The jury was charged as follows:

> "Heinous" means extremely wicked or shockingly evil. "Atrocious" means outrageously wicked and vile. "Cruel" means designed to inflict a high degree of pain, either indifference to or enjoyment of, the suffering of others, pitiless.
>
> ***
>
> [You may impose the death penalty if you find the murder was] especially heinous, atrocious, or cruel in that it involved torture or depravity of mind.

In State v. Williams, 690 S.W.2d 517, 529 (Tenn. 1985), several years after the trial in this case, the supreme court adopted the following definitions:

> Heinous--"Grossly wicked or reprehensible; abominable; odious; vile."
> Atrocious--"Extremely evil or cruel; monstrous; exceptionally bad; abominable."
> Cruel--"Disposed to inflict pain or suffering; causing suffering; painful."
> Torture--"The infliction of severe physical pain as a means of punishment or coercion; the experience of this; mental anguish; any method or thing that causes such pain or anguish; to inflict with great physical or mental pain."
> Depravity--"Moral corruption; wicked or perverse act."

While the trial court did instruct the jury on the meaning of heinous, atrocious, and cruel, there were no definitions provided for either torture or depravity.[1]

In Hartman v. State, 896 S.W.2d 94, 106 n.7 (Tenn. 1995), a case in which the supreme court determined that the Middlebrooks error required reversal and remand for resentencing, the supreme court reasoned as follows:

> While the trial court's failure to instruct the jury in accord with Williams does not by itself require relief be granted the petitioner under the circumstances of this case, the omission of the Williams definition has been a factor in

---

[1]The federal courts have so far rejected the pre-Williams "heinous, atrocious, and cruel" aggravating circumstance as a legitimate factor in imposition of the death penalty. See Houston v. Dutton, 50 F.3d 381, 387 (6th Cir. 1995), cert. denied, 116 S. Ct. 272 (1995).

3

our determination that the Middlebrooks error was not harmless.

The court also observed that the heinous, atrocious, and cruel aggravator "is less objective in nature [and that the court] has sought to make it more objective by defining its terms [in Williams] and by requiring ... the jury be instructed as to these definitions." Id. at 104. Because the jury was not given the complete set of the Williams instructions, I would have found that this factor, the relative weakness of the remaining valid aggravating circumstance, weighs against a finding of harmlessness.

(2)

The majority concludes that the second factor, the nature of the prosecutor's argument at sentencing, weighs favorably for the state. It has determined the felony murder aggravator received little attention because, "in rebuttal argument, the prosecutor ... argued for ... application of [the] aggravator, that the murder was committed to avoid arrest or prosecution." Majority opinion, slip op. at 13. The final argument of the state included the following:

> Who is responsible for the killing of Jimmy Keegan? Well, when two (2) people set out together on a joint venture to rob and to kill, they are guilty of murder in the first degree. ... Who planned this thing out? Who from the very beginning was the primary moving factor in this case? Well, and then the robbery went down, the robbery was planned. Folks, let's face it, there's no questions about that. You've hashed all this over in the jury room when you decided the first phase. This was a planned out thing, it wasn't an accident, it wasn't ... spur of the moment.... [Dicks] pointed out this is the [victim] we're going to rob. He had seen that money. He's the one that had to have [the victim] killed because [the victim] had done business with him, not Strouth. [Dicks] was the beneficiary of this killing. ... If Dicks was to participate in the robbery of this man, then this man would have to die. There was no other logical way that this robbery could have been done with any hope of success in not being apprehended unless it was planned that they were going to kill him in cold blood. ... Death was always the only alternative that [Dicks] ever had for

4

> [the victim], from the moment that the wheels of this deadly thing w[ere] put into motion, death was the only alternative that this man had in order to make that endeavor successful. ... Jeffrey Dicks knew what the punishment for armed robbery was. He said, I'm not going to serve life for a sum of money. ... Armed robbery does carry life in this State, so what was there to lose ... the only reason they had not to kill the victim would be that there is something else [additional punishment] if you kill the victim. ... If you say life in your verdict, you're going to say it makes good sense ... to kill the victims of rape and robbery because you don't have anything else to fear. If you say by your verdict death, you're saying that's stupid to kill your victim, that makes bad sense, and I'm asking you to say that it makes bad sense to kill your victim in a rape, armed robbery, the cases that are enumerated right here in this book that will be in His Honor's charge. "If the murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of ... robbery." ... Without the use of this punishment, we are extending an open invitation to every potential robber and rapist to go ahead and kill their victim .... Well, I think that ... [another] factor[] in this case ... was this murder committed for the purpose of avoiding or interfering with or preventing the lawful arrest or prosecution of the Defendant. ... That aggravating circumstance is there without any doubt.
>
> Aren't the people who ... run the little stores ... aren't they entitled to the best protection that you can give them from armed robbers who will kill them. ... By telling others if they kill their victims in a robbery, that there's another reason besides the fear of going to the penitentiary that ought to keep them from doing this, and that fear is [getting] the death penalty. By your verdict, ladies and gentlemen, you will let the potential committers of robbery, rape and the other enumerated crimes know that if they do that, the death penalty awaits because not to give the death penalty is to tell them that it doesn't wait.

(Emphasis added).


While portions of this argument do, in fact, relate to the killing to avoid arrest or prosecution aggravating circumstance, parts may also be construed to support the felony murder aggravator. The prosecutor specifically referred to the enumerated crimes listed in the felony murder statute. At one point, he quoted a substantial part of the felony murder statute. His final argument covers several

5

pages of transcript. There was substantially more emphasis on the prohibited perpetration of a felony circumstance than the heinous, atrocious, or cruel circumstance, which was hardly mentioned. Because the jury determined the existence of the felony murder aggravator and rejected the avoiding prosecution aggravator, I think it is reasonable to infer that the jury interpreted the argument of the state as in support of the felony murder aggravating circumstance.

(3)

The third factor, the consideration of the amount of evidence admitted to establish the invalid aggravator, weighs in favor of the state. There was no additional evidence admitted at the penalty phase of the trial to establish the felony murder aggravating circumstance. So, this factor should be considered as an indication that the Middlebrooks error was, in fact, harmless.

(4)

In my view, the fourth factor, the strength and quality of the mitigating evidence, should be given neutral application. The nature, quality, and strength of the mitigating evidence neither supports nor militates against a finding of harmlessness. The defendant argued the following mitigating circumstances:

(1) no significant criminal history;

(2) the murder was committed while under the influence of extreme mental disturbance;

(3) the defendant played a minor role;

(4) the defendant acted under the domination of another person;

(5) the defendant was young at the time; and

(6) the defendant had a mental defect which impaired his ability to conform his conduct to the requirements of the law.

6

A psychologist offered testimony that the defendant, who was twenty years old when he committed the crime, was passive, dependent, and weak. He concluded that the defendant used repression and denial as defense mechanisms. There was evidence that the defendant was a passive follower who usually sought out dominating people. While he had no convictions for violent behavior, other proof established that he was "wanted" at the time of the murder for writing bad checks totaling over $14,000.

In my opinion, the mitigating evidence is entitled to some weight. Because the defendant was young and did not have a prior record of committing violent crimes, there was a credible basis for the argument that a life sentence, as opposed to the death penalty, would have been a reasonable alternative. But the mitigating evidence was not overwhelming. The jury could have reasonably rejected the defense argument for leniency.

In assessing whether the Middlebrooks error qualified as harmless, I would have concluded that two factors weigh for the defendant, one weighs for the state, and one is neutral. While a close case, I believe that the trial court should have granted a new sentencing hearing based upon the supreme court rulings in Middlebrooks and Howell. My primary concern relates to the weakness of the charge relating to the heinous atrocious and cruel aggravating circumstance. It is worth pointing out that the state, under our existing law, bears the burden of demonstrating that the error was harmless beyond a doubt. In my opinion, the state has been unable to meet that standard.

_____
Gary R. Wade, Judge

7