# IN THE SUPREME COURT OF TENNESSEE

## AT KNOXVILLE

**FILED**

**June 28, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

DONALD WAYNE STROUTH, )
)
     Appellant, )
)
V. )
)
STATE OF TENNESSEE, )
)
     Appellee. )
)
)

FOR PUBLICATION

**Filed: June 28, 1999**

SULLIVAN COUNTY

Hon. Frank L. Slaughter,
Judge

Supreme Court
No. 03S01-9707-CC-00079

For the Appellant:
Mark E. Olive
321 W. Jefferson St.
Tallahassee, FL 32301

For the Appellee:
Paul G. Summers
Attorney General & Reporter

Michael E. Moore
Solicitor General

Gordon W. Smith
Associate Solicitor General
Nashville, Tennessee

H. Greeley Wells, Jr.
District Attorney General
Second Judicial District

Edward E. Wilson
Assistant District Attorney
P.O. Box 526
Blountville, TN 37617

# O P I N I O N

AFFIRMED.                                               DROWOTA, J.

In this post conviction capital appeal, we must determine whether the jury's reliance upon the invalid felony murder aggravating circumstance as support for imposition of the death penalty is harmless error beyond a reasonable doubt under the analysis adopted in State v. Howell, 868 S.W.2d 238 (Tenn. 1993). Both the trial court and the Court of Criminal Appeals concluded that the error was harmless and dismissed the petition for post conviction relief. After fully reviewing the record, we conclude that the sentence would have been the same had the jury given no weight to the invalid felony murder aggravating circumstance and therefore affirm the lower courts' dismissal of the petition.

**FACTUAL BACKGROUND**

On February 15, 1978, James Keegan, the sole proprietor of a used clothing store in downtown Kingsport, Tennessee, was murdered. Keegan's body was found on the floor of his store. His pockets had been emptied of his billfold and a large roll of money he habitually carried, and several items were missing from the store. Keegan had sustained a severe blow to the head with a blunt object and deep lacerations on his scalp and ear. Keegan's death resulted from a deep laceration which extended the entire width of his neck. Keegan's throat had been slit literally from ear to ear. The laceration was approximately three inches deep and completely severed both the large muscle of Keegan's neck and his jugular vein. According to the medical examiner, Keegan had been unconscious from the blow to his head when his throat had been cut, and Keegan had bled to death from the neck wound within fifteen minutes.

Donald Wayne Strouth and Jeffrey Stuart Dicks had been seen in the area of the store around the time of the murder, and they were eventually arrested and charged with the robbing and killing of Keegan. The State sought the death penalty with respect to both Strouth and Dicks. Each made a pre-trial statement to police acknowledging his presence at the scene of the crime, but accusing the other of killing Keegan. For this reason, Strouth and Dicks were tried separately to avoid the possibility of violating Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The proof introduced at Strouth's trial demonstrated that Keegan's body was discovered by his wife around noon. Police were called to the scene of the crime and discovered two sets of footprints outside the back entrance of the store. Police also discovered that an electric heater had been turned on inside the store and a fuel-soaked towel had been placed across the heater. Testimony indicated that Keegan did not use electric heaters and had them in the store only as resale items. Dicks and his girlfriend, Betty Merrit, lived in an apartment near the store owned by Keegan, and were often visited by their friends, Strouth and his girlfriend, Barbara Davis. About a week before the murder, Dicks and Merrit went to Keegan's store and sold him some clothes. According to Merrit, Keegan paid them from a large roll of cash he kept in his front pants pocket. On the day before the murder, an employee of a nearby dry cleaners testified that he had seen Strouth and Dicks standing and talking beside the cleaners, near Keegan's store. Two other eyewitnesses saw both Strouth and Dicks in the area of Keegan's store on the morning of the murder.

Evidence accumulated by the police and introduced at Strouth's trial tended to show that Strouth had been the person who actually cut Keegan's throat. Witnesses testified to seeing blood on Strouth's hands and clothes shortly after the murder. Strouth's girlfriend told the jury that she had given Strouth a large hawkbill knife as a present sometime before the murder, and she said that Strouth had admitted to the robbery, and stated, "Jeff froze on me." The medical examiner testified that the hawk-bill knife owned by Strouth was consistent with and could have been used to slit Keegan's throat. The medical examiner also testified that the blood spots on the pants that Strouth had worn at the time of the murder were consistent with the theory that Strouth had stood over the victim and cut his throat.[1]

Upon hearing the proof, the jury found Strouth guilty of murder in the perpetration of a robbery and robbery with a deadly weapon. In the subsequent sentencing hearing, the State relied upon the following six aggravating circumstances: (1) the defendant was previously convicted of one or more felonies, other than the present charge, which involved the use or threat of violence to the person; (2) the defendant knowingly created a great risk of death to two or more persons, other than the victim murdered, during his act of murder; (3) the defendant committed murder for remuneration or the promise of remuneration; (4) the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind; (5) the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of

---

[1]A more complete recitation of the facts is contained in this Court's opinion on direct appeal. See State v. Strouth, 620 S.W.2d 467 (Tenn. 1981).

the defendant or another; and (6) the murder was committed while the defendant was engaged in committing or was an accomplice in the commission of, or was attempting to commit . . . robbery. Tenn. Code Ann. § 39-2404(i)(2) - (i)(7) (Supp. 1978).

Little proof was offered by either the State or the defendant at the sentencing hearing. The State offered proof to establish that the defendant had been previously convicted of a felony crime against nature in North Carolina. The defense called Officer Jim Keesling, who had taken two statements from Strouth on March 8 and 9, 1978. Officer Keesling read the statements into the record for the jury's consideration. In the first statement Strouth denied that he had been in Kingsport on the day of the murder, and in the second statement, Strouth claimed that Dicks and a third person had committed the robbery and murder while he waited in the car. The defense attempted to call a minister and sociology teacher to testify about the Christian philosophy on the death penalty and about the deterrent effect of the death penalty, but, the trial court disallowed the testimony after a jury-out hearing.

The jury deliberated for approximately seven hours before returning a verdict. Finding that the State had proven two aggravating circumstances beyond a reasonable doubt, (1) the murder was especially heinous, atrocious or cruel in that it involved torture or depravity of mind; and (2) the murder was committed while the defendant was engaged in committing a robbery,[2] and also finding that

---

[2]Tenn. Code Ann. § 39-2404(i)(5) & (i)(7) (Supp. 1978).

there were no mitigating circumstances sufficiently substantial to outweigh the aggravating circumstances, the jury sentenced Strouth to death by electrocution.

On direct appeal to this Court, Strouth's first degree felony murder conviction and death sentence were affirmed. State v. Strouth, 620 S.W.2d 467 (Tenn. 1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1491, 71 L.Ed.2d 692 (1982).[3] However, this Court vacated Strouth's armed robbery conviction holding that dual convictions for felony murder and the underlying felony violated principles of double jeopardy.[4]

Strouth filed his first post-conviction petition in 1982, alleging numerous constitutional violations. After a lengthy evidentiary hearing, the trial court denied relief. The Court of Criminal Appeals affirmed, and this Court declined to review the case. Strouth v. State, 755 S.W.2d 819 (Tenn. Crim. App. 1986), perm. app. denied (Tenn. 1987).

Strouth's current post-conviction petition was filed on December 30, 1993. Among the claims raised, Strouth asserted that his death sentence should be set aside under State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992). The trial court held an evidentiary hearing and concluded that the Middlebrooks error was

---

[3]In his separate trial, co-defendant Dicks was also convicted of first degree felony murder and sentenced to death by electrocution. Dicks' conviction and death sentence were also affirmed by this Court on direct appeal. State v. Dicks, 615 S.W.2d 126 (Tenn. 1981).

[4]This Court later held in State v. Blackburn, 694 S.W.2d 934 (Tenn. 1985), that dual convictions for both felony murder and the underlying felony do not violate double jeopardy principles.

-6-

harmless beyond a reasonable doubt under the analysis adopted by this Court in Howell, supra. The trial court held that the remaining claims were either barred by the statute of limitations or waived.[5] The Court of Criminal Appeals affirmed the trial court's dismissal of the petition, also finding the Middlebrooks error harmless beyond a reasonable doubt.

Thereafter, we granted Strouth's appeal limited to the issue of whether the lower courts' erred in finding the Middlebrooks error harmless beyond a reasonable doubt.[6] For the reasons that follow, we affirm the judgment of the Court of Criminal Appeals which upheld the trial court's dismissal of the post conviction petition.

## HARMLESS ERROR ANALYSIS

---

[5]The post conviction statute of limitations on this case expired on July 1, 1989. Tenn. Code Ann. § 40-30-102 (repealed 1995); Abston v. State, 749 S.W.2d 487 (Tenn. Crim. App. 1988). However, Middlebrooks announced a new constitutional rule which is to be applied retroactively. Barber v. State, 889 S.W.2d 185, 186 (Tenn. 1994). Accordingly, with regard to Strouth's Middlebrooks claim, which arose after the expiration of the statute of limitations, the present petition was timely filed under the rule announced in Burford v. State, 845 S.W.2d 204 (Tenn. 1992); see also Sands v. State, 903 S.W.2d 297 (Tenn. 1995).

[6]Following oral argument, this Court ordered supplemental briefing on three additional issues. Upon consideration of the supplemental briefs, particularly the thorough brief filed by and through counsel for Strouth, the Court is now convinced that Strouth was convicted solely on the basis of felony murder. Therefore, we deem it unnecessary to address in the body of this opinion the issues upon which supplemental briefing was ordered.

In Middlebrooks, a majority[7] of this Court determined that when a defendant is convicted of first degree murder solely on the basis of felony murder, the felony murder aggravating circumstance may not be used as a basis to support imposition of the death penalty because the aggravating circumstance merely duplicates the elements of the underlying offense. As such, the felony murder aggravating circumstance fails to sufficiently narrow the class of death-eligible murderers and violates Article I, § 16 of the Tennessee Constitution.[8] 840 S.W.2d at 346. We held that a sentence of death may not be imposed for a conviction of first degree felony murder unless it is based upon at least one of the other statutory aggravating circumstances. Id. at 346-47. Because the rule announced in Middlebrooks enhanced the integrity and reliability of the sentencing process, we have applied the rule retroactively. Boyd v. State, 959 S.W.2d 557, 560 (Tenn. 1998); Barber, 889 S.W.2d at 186.

In this case, at the guilt phase of the trial, Strouth was convicted of the first degree felony murder of James Keegan. In the sentencing phase of the trial, the jury based the sentence of death upon two aggravating circumstances, one of which was that the crime was committed while the defendant was engaged in committing the felony of robbery. Accordingly, the jury's reliance upon the felony murder aggravating circumstance in this case contravenes the rule adopted in Middlebrooks.

---

[7]The author of this opinion and retired Justice O'Brien dissented from the holding in Middlebrooks. 840 S.W.2d at 347-50 (Drowota, J., dissenting).

[8]Though the decision in Middlebrooks discussed federal law, this Court has emphasized in subsequent cases that Middlebrooks was based independently upon Article I, § 16 of the Tennessee Constitution. State v. Bigbee, 885 S.W.2d 797, 816 (Tenn. 1994).

However, error under Middlebrooks does not result in automatic reversal; such error is subject to harmless error analysis. A comprehensive analytical framework to govern harmless error analysis was first announced by this Court in State v. Howell, 868 S.W.2d 238 (Tenn. 1993). In that case we held that a Middlebrooks error will be deemed harmless if a reviewing court concludes "beyond a reasonable doubt that the sentence would have been the same had the jury given no weight to the invalid felony murder aggravating factor." Id. at 262. Our holding was premised upon decisions of the United States Supreme Court which had directed that if a jury considers an invalid or improper aggravating circumstance, either "constitutional harmless error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence." Stringer v. Black, 503 U.S. 222, 232, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367 (1992); see also Richmond v. Lewis, 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992); Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).

In Howell, we stressed the importance of applying a harmless error analysis which guarantees the precision that individualized sentencing demands and which also provides a principled explanation for our decision in each case. Id. at 260-61; Boyd, 959 S.W.2d at 560. To aid reviewing courts in achieving these twin objectives, we enumerated several nonexclusive factors which should guide the harmless error analysis. The factors include, but are not limited to, the following: (1) the number and strength of the remaining valid aggravating circumstances; (2) the extent to which the prosecutor emphasizes the invalid aggravating circumstance during closing argument; (3) the evidence admitted to establish the

invalid aggravating circumstance; and (4) the nature, quality, and strength of the mitigating evidence. Howell, 868 S.W.2d at 260-61. If a reviewing court is convinced beyond a reasonable doubt that the jury would have imposed the same sentence had it given no weight to the invalid aggravating circumstance, the error is harmless and the sentence may be affirmed. Id. at 262. Applying the analysis in this cases leads us to conclude that the error is harmless and does not require resentencing.

We first consider the strength of the single remaining valid aggravating circumstance -- the murder was especially heinous, atrocious or cruel in that it involved torture or depravity of mind. Tenn. Code Ann. § 39-2404(i)(5) (Supp. 1978). Strouth asserts that this aggravating circumstance is weak and lacks objective reliability. In support of his argument, Strouth points out that Keegan was unconscious when his throat was cut and therefore did not experience pain. Strouth also emphasizes that the jury instructions included only the language of the statutory aggravating circumstance and did not include the definitions announced later by this Court in State v. Williams, 690 S.W.2d 517, 529-532 (Tenn. 1985). The State responds that this Court has repeatedly upheld the constitutionality of the (i)(5) aggravating circumstance, and has never held that the Williams definitions are constitutionally required. The State emphasizes that a victim need not be conscious to support a finding of depravity of mind and contends that the proof in this record overwhelmingly establishes the applicability and strength of the aggravating circumstance. We agree.

As noted by the State, this Court has repeatedly upheld the constitutional validity of the (i)(5) aggravating circumstance. See e.g. State v. Blanton, 975 S.W.2d 269, 280 (Tenn. 1998); Hartman v. State, 896 S.W.2d 94, 105 (Tenn. 1995); State v. Black, 815 S.W.2d 166, 181 (Tenn. 1991); State v. Thompson, 768 S.W.2d 239, 252 (Tenn. 1989); State v. Barber, 753 S.W.2d 659, 670 (Tenn. 1988). In addition, as the State points out, we have specifically held that the Williams instruction requirement is not to be retroactively applied. State v. O'Guinn, 709 S.W.2d 561, 568 (Tenn. 1986). Finally, we have never held that the Williams definitions are constitutionally required. Hartman, 896 S.W.2d at 105. In fact, in Thompson, we distinguished the language of Tennessee's (i)(5) aggravating circumstance from the language held to be unconstitutionally vague by the United States Supreme Court in Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), and Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). We pointed out that, unlike those cases, the "heinous, atrocious, or cruel" language in the Tennessee statute does not stand alone, but, instead, is modified and limited by the phrase, "in that it involved torture or depravity of mind." Thompson, 768 S.W.2d at 252.[9] In conducting

_____

[9]As support for his contention that the (i)(5) aggravating circumstance is unconstitutionally vague without further definition Strouth relies upon the Sixth Circuit's decision in Houston v. Dutton, 50 F.3d 381 (6th Cir. 1995). In our view, the Houston decision on this issue is not particularly persuasive considering that the State conceded the "instruction to be erroneous in this case." Id. at 387. In any event, this Court is not bound by decisions of the federal district and circuit courts. We are bound only by decisions of the United States Supreme Court. State v. McKay, 680 S.W.2d 447, 450 (Tenn. 1984). This issue has been asserted in the United States Supreme Court by many inmates of Tennessee's death row, yet the Supreme Court has never granted review and held the (i)(5) aggravating circumstance unconstitutional. We realize that the United States Supreme Court's denial of certiorari is not a ruling on the merits. Teague v. Lane, 489 U.S. 288, 296, 109 S.Ct. 1060, 1067, 103 L.Ed.2d 334 (1989). However, until the United States Supreme Court renders an opinion holding the aggravating circumstance unconstitutional, we will continue to adhere to the prior decisions of this Court which have upheld the constitutional validity of the aggravating

Howell harmless error review, we have considered whether the Williams instructions were provided to the jury.[10] We necessarily must consider the evidence and instructions remaining after elimination of the invalid aggravating circumstance in order to answer the inquiry posed by Howell --whether beyond a reasonable doubt the sentence would have been the same had the jury given no weight to the invalid aggravating circumstance. The absence of the Williams definitions has never been held to limit the significance of the (i)(5) aggravating circumstance in a Howell analysis.

Though the (i)(5) aggravating circumstance is more subjective than other aggravating circumstances in the sense that it requires careful consideration of the facts of each murder, this subjectivity does not negate its strength in a Howell analysis if, as in this case, the evidence in the record presented to the jury overwhelmingly established the applicability of the aggravating circumstance.

In this case, the victim was approximately seventy (70) years old at the time of the murder. The medical examiner found that Keegan had suffered a skull fracture so severe that the skull had been pushed in toward the brain, causing a laceration on the frontal lobe of the brain. This injury bruised the outer surface of the skin and was two inches in diameter. A blunt instrument, possibly a rock,

―――――――――――――――

circumstance.

[10]In Hartman, 896 S.W.2d at 103-104, this Court considered the fact that the jury was not given the Williams definitions as part of its Howell analysis. Also considered significant in that case was the fact that the (i)(5) aggravating circumstance was based almost entirely upon the testimony of a witness whose credibility had been "seriously contested." Though the Williams definitions were not given in this case, unlike Hartman, the (i)(5) aggravating circumstance is based upon objective physical evidence and testimonial evidence which is not seriously disputed.

-12-

likely caused this wound and rendered the victim unconscious. Keegan also had a jagged laceration over the right portion of his skull which penetrated the full thickness of the scalp through to the bone. This injury was one-half to three-quarters of an inch deep. Keegan also had a laceration across his right ear which transected and cut through the cartilage. Both of these wounds were made by a very sharp instrument. The fatal injury was a laceration of the throat which extended from ear to ear and which was two and one-half to three inches in depth. As one law enforcement official described this wound, the "victim's throat was cut; head almost decapitated." The medical examiner testified that this fatal wound was inflicted when the victim was lying unconscious on the floor. The cruelty with which the perpetrators attacked this elderly man and showed no mercy toward him after he was already unconscious and helpless demonstrates depravity of mind. See State v. Zagorski, 701 S.W.2d 808, 814 (Tenn. 1985) (holding that infliction of gratuitous violence and needless mutilation of victims who were already helpless evinced depravity of mind); State v. Van Tran, 864 S.W.2d 465 (Tenn. 1993) (holding that depravity of mind established by proof that the defendant shot the seventy-four-year-old victim as she lay injured and helpless on the floor).

In specifically rejecting Strouth's vagueness challenge to the aggravating circumstance in an opinion denying his petition to rehear this Court's opinion on direct appeal, we described the aggravating circumstance and the proof supporting it as follows:

> This Court has consistently held that this aggravating circumstance is directed to the conscienceless or pitiless act of a defendant which is unnecessarily torturous to the victim, or evinces a depraved state of mind; and that the depraved state of mind or the torture inflicted must meet the test of heinous, atrocious, or cruel. See State v. Pritchett, 621 S.W.2d 127 (Tenn. 1981); State v.

-13-

> Groseclose, et al., 615 S.W.2d 142 (Tenn. 1981); State v. Dicks, 615
> S.W.2d 126 (Tenn. 1981). This holding or construction, in our
> opinion, meets the test of Godfrey v. Georgia, supra, and also that
> voiced in Proffitt v. Florida, 428 U.S. 242, 255-56, 96 S.Ct. 2960,
> 2968, 49 L.Ed.2d 913 (1976).
>
> [Strouth] and his companion-in-crime Jeffrey Dicks, struck
> James Keegan on the head with a rock, rendering him unconscious.
> While Mr. Keegan was in an unconscious state, [Strouth] and his
> companion slit Mr. Keegan's throat and left him to bleed to death - a
> cold-blooded, intentional, conscienceless and pitiless act. An act
> which can only be characterized as heinous and atrocious, and one
> which evinces a depraved state of mind and justifies the imposition
> of the death penalty, no mitigating circumstances being shown.

Contrary to Strouth's assertion, the remaining valid aggravating circumstance in this case is strong. It is supported by an abundance of proof which was presented to the jury. Given the qualitative nature of this aggravating circumstance and the high quantum of proof supporting, we conclude that it carried substantial weight with the jury.

Next, we must consider the extent to which the prosecutor emphasized the invalid felony murder aggravating circumstance in his closing argument. Our review of the record does not indicate that the district attorney placed any unusual emphasis on this aggravating circumstance. The closing argument first focused upon the fact that little or no evidence of mitigating circumstances had been presented. Next the prosecutor argued each of the six aggravating circumstances upon which the State was relying at the sentencing hearing. The argument relating to the felony murder aggravating circumstance was minimal. The prosecutor merely reminded the jurors that by finding the defendant guilty of the offense, they had also found the felony murder aggravating circumstance.

In his brief, Strouth quotes extensively from the district attorney's argument in an attempt to demonstrate undue emphasis. However, as the Court of Criminal Appeals held, an objective reading of these excerpts reveals that the prosecution was trying to emphasize an aggravating circumstance that the jury eventually rejected, that the murder was committed to avoid arrest or prosecution, i.e. a witness killing. Therefore, the prosecutor did not unduly emphasize the invalid aggravating circumstance in closing argument. In fact, the emphasis placed upon this aggravating circumstance was minimal.

Next, we note that no materially inaccurate or inadmissible evidence was admitted to establish the aggravating circumstance. The evidence relied upon to establish the aggravating circumstance had been properly admitted at the guilt phase of the trial to support the conviction for felony murder. See Howell, 868 S.W.2d at 261. No additional evidence was introduced to support the invalid aggravating circumstance at sentencing. An aggravating circumstance which duplicates the elements of the underlying crime has less relative tendency to prejudicially affect the sentence imposed. Id.

Finally, we must consider the nature, strength, and quality of the mitigating evidence. We note that very little evidence was offered in mitigation. Officer Keesling read two statements Strouth had given to law enforcement officials. Counsel for the defense sought to introduce evidence on the Christian philosophy of death as a punishment, but the court excluded such evidence as irrelevant. Strouth now argues that much weight should be given to the fact that he was young at the time this offense was committed -- nineteen-years-old. He argues

-15-

that youth is an intrinsically strong mitigating circumstance and that it lessens his degree of culpability for the crime. The State mentioned the defendant's age when arguing to the jury that little mitigation evidence had been presented. Defense counsel did not stress Strouth's age in closing argument. Instead, defense counsel asked the jury to impose a life sentence because all "killing," including the death penalty as punishment for crime, is wrong.

We agree with the Court of Criminal Appeals that the quality of the mitigation offered was weak. Strouth's statements read by Officer Keesling to the jury were contradictory. Any positive effect the exculpatory statement may have had was virtually eliminated when measured against testimony and physical evidence at trial that demonstrated Strouth's primary role in the crime. The fact that Strouth was nineteen at the time of the killing carries no great mitigation weight since the record reflects that Strouth had been living independent of his parents, traveling routinely between Tennessee and North Carolina, and committing crimes as a juvenile. This is not the picture of a dependent teenager, nor does it demonstrate an innocent young man whose inexperience in criminal matters may have led him into an unlawful situation. Though Strouth argues that he did not actually commit the murder, but was merely present when it occurred and submits that this lesser degree of culpability should be considered in mitigation, the evidence submitted at trial belies these contentions. The evidence, as summarized previously, indicates that Strouth was actively involved in the crime and actually inflicted the fatal wound. Overall, the quantity, nature and quality of the mitigating evidence is weak.

## CONCLUSION

After fully considering the record in this case in light of the analysis adopted in Howell, we are convinced, beyond a reasonable doubt, that the sentence would have been the same had the jury given no consideration to the invalid felony murder aggravating circumstance. Therefore, we conclude that the jury's consideration of the invalid aggravating circumstance was harmless error. The remaining aggravating circumstance was supported by an abundance of proof which was qualitatively persuasive. The prosecutor did not emphasize the invalid aggravating circumstance in his closing argument, and no inadmissible evidence was introduced to support the invalid felony murder aggravating circumstance. Little mitigation proof was offered, and the nature and quality of the mitigating proof which was offered is weak. As a result, we conclude that the trial court and Court of Criminal Appeals correctly held the Middlebrooks error harmless beyond a reasonable doubt. The judgments of the lower courts which dismissed Strouth's petition for post-conviction relief are affirmed. Unless stayed by this Court or other proper authority, Strouth's sentence of death by electrocution shall be carried out on October 28, 1999.

_____
FRANK F. DROWOTA, III
JUSTICE

**Concur**:

Anderson, C.J.
Birch, J.

-17-

Holder, J. - Separate Concurring Opinion